UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN LASER SKINCARE, LLC | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 13-CV-1256 |
| v. | ) |
| | ) Judge John W. Darrah |
| RICHARD C. MORGAN, JR., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

On February 19, 2013, American Laser Skincare, LLC ("ALS") filed its Amended Verified Complaint (the "Complaint") and a Motion for Preliminary Injunction.[1] ALS's two-count Complaint sought: (1) injunctive relief based on Morgan's alleged breach of the non-compete and non-solicitation provisions of the Consulting Agreement between the parties, including a one-year extension of those restrictive covenants "from the date of judgment" (Count I); and (2) declaratory relief that no further payments are due from ALS to Morgan under the Consulting Agreement as a result of these purported breaches (Count II).

On February 13, 2013, before ALS filed its Complaint, Defendant Richard C. Morgan, Jr. filed an arbitration demand on behalf of himself and his company, RMJ Consulting, LLC, before the American Arbitration Association ("AAA"). Morgan has now moved, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3 & 4 ("FAA" or the "Act"), to compel ALS to arbitrate its claims and stay these proceedings in favor of arbitration proceedings before the AAA.

---

[1] ALS is the successor to American Laser Center, LLC ("ALC"), as will be further discussed below.

## BACKGROUND

"Courts treat motions to compel arbitration as assertions that they are deprived of subject matter jurisdiction during the course of arbitration. Accordingly, for purposes of this motion, the court draws the background facts from the parties' pleadings, but will also consider attached exhibits and affidavits." *Reineke v. Circuit City Stores, Inc.*, No. 03-CV-3146, 2004 WL 442639, at *1 (N.D. Ill. Mar. 8, 2004) (citations omitted).

Plaintiff ALS is a Delaware limited-liability company, with its principal place of business in Farmington Hills, Michigan, and is the nation's largest provider of aesthetic services. (Compl. ¶ 1.) Defendant Morgan is a resident of Bedford, New York, and the founder and former executive of ALC. (*Id.* ¶¶ 2, 10.)

On or about October 18, 2010, Morgan and his consulting entity, RMJ Consulting LLC, entered into a Consulting Agreement with ALC, pursuant to which Morgan became an independent consultant for ALC. (*Id.*) Morgan's responsibilities as a consultant for ALC included, among other things, providing guidance on sales and marketing strategies, attending corporate meetings, and advising ALC's CEO regarding the company's business, including cost planning, budgeting, and workforce. (*Id.* ¶ 12.)

Section 20(m) of the Consulting Agreement provided that "[a]ny dispute or controversy arising under or in connection with [that] Agreement shall be settled exclusively by arbitration," under the rules of the AAA. (Def.'s Mem. in Supp. of Mot. to Compel Arb. ("Def's Mot.") at 2.) The Consulting Agreement had a two-year term, set to expire October 31, 2012. Upon termination, Morgan remained subject to certain non-compete and non-solicitation provisions for twelve months. (Compl. ¶ 15.)

In or about December 2011, ALS acquired the assets of ALC, including the Consulting Agreement. (Compl. ¶¶ 7-8.) Starting in or about the spring of 2011, Morgan began informally consulting for two ALS competitors, Laser Cosmetica and Body Cosmetica (collectively, "Cosmetica"). (*Id.* ¶ 17.) Morgan entered into a formal consulting agreement with Cosmetica, began working full-time for Cosmetica, and recruited ALS employees to join him at Cosmetica. (*Id.* ¶¶ 20-21.) Morgan also allegedly negotiated with the owner of Cosmetica and created a new company, known as Laser Cosmetica, of which Morgan is the chief owner and president. (*Id.* ¶¶ 25-27.)

During the summer of 2012, various disputes arose between the parties with respect to the meaning and enforcement of the Consulting Agreement. (Def.'s Motion at 2.) ALS made its last payment to Morgan under the Consulting Agreement on or about July 31, 2012. (*Id.*) According to Morgan, counsel for Morgan requested cooperation from ALS's counsel with respect to the institution of arbitration proceedings, as required by the parties' agreement, but he received no response to this request. (*Id.*)

On November 15, 2012, ALS filed a complaint in Morgan's personal bankruptcy pending before the U.S. Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), seeking, *inter alia*, a preliminary injunction. (*Id.* at 2-3.) On or about February 8, 2013, the Bankruptcy Court declined the relief requested by ALS due to a lack of jurisdiction but lifted the automatic stay to allow ALS to pursue its claims "in a forum of competent jurisdiction." (*Id.* at 3.)

On February 13, 2013, after the Bankruptcy Court's lift stay order, Morgan filed an arbitration demand against ALS on behalf of himself and his company, RMJ Consulting, LLC, before the AAA (the "Arbitration Demand"). (*Id.*) That Arbitration Demand detailed the

procedural history of the parties' disputes, Morgan's claims against ALS (and its predecessor), and the unreasonableness and unenforceability of the restrictive covenants contained in the Consulting Agreement. (*Id.*)

On February 19, 2013, ALS filed the instant Complaint and Preliminary Injunction Motion. In Count I, ALS requested that Morgan be preliminarily enjoined from competing with ALS and that he be enjoined from competing with ALS for a period of one year from the judgment. In Count II, ALS requested a declaratory judgment that Morgan was not owed any further payment under the Consulting Agreement between the parties.

On February 22, 2013, the AAA sent counsel for the parties a letter stating that the arbitration would be conducted under the Commercial Arbitration Rules and providing the parties with notice of certain deadlines, including a March 11, 2013 deadline for ALS to file an answering statement to the Arbitration Demand. (*Id.*) Under Rule 34 of the Commercial Arbitration Rules, interim measures, "including injunctive relief," are available to the parties. (*Id.*; *see also* Def.'s Ex. F.)

On March 4, 2013, ALS filed its Answering Statement and Counterclaim (the "Answering Statement") before the AAA. (*See* Def.'s Reply Br. Ex. G.) ALS's Answering Statement mirrors the relief requested in its Complaint. In Count II of its Answering Statement, ALS requested that the AAA preliminarily enjoin Morgan from competing with ALS and to enjoin Morgan from competing with ALS for a period of one year from judgment. (*Id.*) In Count III, ALS requested a declaratory judgment that no further payments are due under the Consulting Agreement. ALS also submitted a brief and demand for a preliminary injunction before the AAA. (*See* Def.'s Reply Br. Ex. H.)

On March 6, 2013, ALS filed with this Court its brief in opposition to Morgan's Motion to Compel Arbitration.

**ANALYSIS**

The Federal Arbitration Act ("FAA") provides that an arbitration clause in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA embodies a "liberal federal policy favoring arbitration." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (internal citations and quotations omitted).

Under the FAA, a court must order arbitration where the court finds: (1) "a written agreement to arbitrate," (2) "a dispute within the scope of the arbitration agreement," and (3) "a refusal by the opposing party to proceed to arbitration." *Zurich Am. Ins. Co. v. Watts Indus.*, 417 F.3d 682, 687 (7th Cir. 2005). Once the court is satisfied that the dispute before it is arbitrable, the court must stay the claim pending arbitration. 9 U.S.C. § 3; *see also Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007) (*Volkswagen of Am., Inc.*) ("For arbitrable issues, a § 3 stay is mandatory."). When a court is confronted with a mix of arbitrable and nonarbitrable issues, the court has discretion to stay the nonarbitrable claims as well. *Volkswagen of Am., Inc.*, 474 F.3d at 971.

*Morgan's Motion to Compel Arbitration and Stay the Proceedings*

Morgan has moved to compel arbitration and stay the instant proceedings. He argues that ALS has refused to arbitrate by filing its Complaint against him and that any relief sought by ALS should be decided in arbitration.

ALS argues that Morgan's motion should be denied and that a preliminary injunction hearing should be scheduled. ALS contends that it is not "refusing to arbitrate," that it has

submitted an Answering Statement in the arbitration, and has attached an email to that effect. However, ALS omits the fact that its Answering Statement in the ongoing arbitration seeks *exactly* the same relief as its Complaint – namely, a declaratory judgment and preliminary injunctive relief. Although ALS accuses Morgan of chicanery, ALS's failure to attach its own arbitration documents appears deceptive.[2] Clearly, the relationship between these two parties is very acrimonious, but ALS should be more forthcoming about its claims in the arbitration proceedings.

Because ALS is proceeding in the arbitration and not "refusing" to arbitrate, *see Zurich*, 417 F.3d at 687, Morgan's motion with respect to compelling arbitration is denied as moot.[3] However, as evidenced by the fact that ALS's Answering Statement mirrors the relief sought in its Complaint, ALS's claims clearly fall within the Consulting Agreement's broad arbitration provision. Indeed, ALS appears to concede that its claims are arbitrable. Consequently, Morgan's motion to stay is granted. The action is stayed under 9 U.S.C. § 3 pending arbitration.

*ALS's Motion for a Preliminary Injunction*

The FAA "has been interpreted to allow preliminary injunction proceedings to go forward, even while all other judicial proceedings have been stayed pending arbitration, in order to preserve the status quo and prevent irreparable harm." *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 527 (7th Cir. 1997) (*IDS Life Ins. Co. I*). Injunctive relief may be granted "in order to prevent arbitration from being rendered futile by conduct of the other party." *Id.* However, the injunction must be dissolved "as soon as the arbitrator has an opportunity to decide

---

[2] Morgan attached to his reply brief ALS's Answering Statement and ALS's brief in support of its demand for preliminary injunctive relief.

[3] ALS contends that Morgan has not paid the fees for arbitration to proceed. Morgan counters that he has paid the fees as of March 12, 2013.

whether to grant preliminary relief." *IDS Life Ins. Co. v. SunAmerica Life Ins. Co.*, 136 F.3d 537, 539 (7th Circ. 1998) (*IDS Life Ins. Co. II*) (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano*, 999 F.2d 211, 215-16 (7th Cir. 1993)); *see also IDS Life Ins. Co. I*, 103 F.3d at 527 ("the injunction [should] last just long enough to allow a request for injunctive relief to be referred to the arbitral tribunal."). "In other words, the entire case is shifted from the judge to the arbitrator in order to keep the two adjudicators from stepping on each other's toes." *IDS Life Ins. Co. II*, 136 F.3d at 539-540.

In this case, arbitration proceedings have commenced, and ALS has made a demand for preliminary injunction against Morgan in that forum. However, ALS argues that it needs preliminary injunctive relief from the district court because emergency relief is not available in the arbitration.[4] Morgan concedes that he has not consented to emergency expedited relief in the arbitration; however, Morgan argues that ALS is entitled to injunctive relief on a normal (not expedited) track. (*See* Def's Reply Br. at p.5n3; *see also* Pl.'s Ex. B.) Morgan further argues that a preliminary injunction in the federal district court is not appropriate because the arbitration proceedings have already commenced. Morgan represents in his reply brief that the selection of the AAA panel will "be selected immediately" after March 22, 2013. (Def.'s Reply Br. at 4.) On April 12, 2013, Morgan also filed a letter that three arbitrators have been confirmed by the AAA. (Dkt. #26.)

At this point, conducting a preliminary injunction hearing and adjudicating the motion in the federal district court would be unnecessarily duplicative and a waste of resources. Furthermore, ALS's argument regarding Morgan's objection to emergency relief in the

---

[4] On April 16, 2013, ALS filed a motion for leave to file a surreply *instanter* regarding the issue of expedited preliminary injunctive relief with the AAA. That motion raises no new issues that have not already been considered by the Court and is denied as moot.

7

arbitration is a red herring because ALS has not sought such emergency relief, such as temporary restraining order, with the district court. It appears, based on Morgan's representations, that the AAA panel has been selected and available to hear ALS's demand for preliminary injunction against Morgan. Adjudicating ALS's preliminary injunction motion in the district court could result in "inconsistent rulings" with those rendered in arbitration. *See Volkswagen of Am., Inc.*, 474 F.3d at 972. ALS's motion for a preliminary injunction is denied.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Compel Arbitration and Stay the Instant Proceedings [13] is partially granted and partially denied. Defendant's Motion to Compel Arbitration is denied as moot; Defendant's Motion to Stay the Instant Proceedings is granted. Plaintiff's Motion for Preliminary Injunction [6] is denied without prejudice. The case is stayed.

Date:__April 17, 2013_____          _____
                                          JOHN W. DARRAH
                                          United States District Court Judge